UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICARDO CHAVEZ, | ) NO. EDCV 11-00125 SS |
| Plaintiff, | ) |
| v. | ) **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

**I.**

**INTRODUCTION**

Ricardo Chavez ("Plaintiff") brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration ("Commissioner" or the "Agency") denying his application for Supplemental Security Income ("SSI"). The parties consented, pursuant to 28 U.S.C. § 636, to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Agency is REVERSED and REMANDED for further proceedings.

## II.

**PROCEDURAL HISTORY**

Plaintiff filed an application for SSI on March 8, 2007 alleging a disability onset date of March 1, 2007, due to affective mood disorders and a learning disorder. (Administrative Record ("AR") 73). The Agency initially denied Plaintiff's claim on April 10, 2007. (Id.). When the Agency denied Plaintiff's application on reconsideration, Plaintiff requested a hearing. (AR 115). On October 31, 2008, Plaintiff appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (AR 18-50). He also appeared and testified at a supplemental hearing held before the same ALJ on January 23, 2009. (AR 51-72). On April 23, 2009, the ALJ issued a decision denying benefits. (AR 5-17). The Appeals Council denied Plaintiff's request for review on November 20, 2010 (AR 1-3) making the ALJ's decision the final decision of the Agency. Plaintiff subsequently commenced the instant action.

## III.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity,[1] which is expected to result in death or last for a continuous period of at least twelve

---

[1] Substantial gainful activity means work that involves doing significant and productive physical or mental duties done for pay or profit. 20 C.F.R. § 416.910.

months. Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed, and render claimant incapable of performing any other substantial gainful employment existing in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(D)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. § 416.920. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not found disabled. If not, proceed to step two.

(2) Is claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does claimant's impairment meet or equal the requirements for any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.

(4) Is the claimant capable of performing his past work? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001); 20 C.F.R. § 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54. If, at step four, the claimant meets his burden of establishing an inability to perform his past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[2] age, education, and work experience. Tackett, 180 F.3d at 1100; 20 C.F.R. § 416.920(g)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take testimony from a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## IV.

### STANDARD OF REVIEW

Under 41 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001)(citing

---

[2] Residual functional capacity is "the most [one] can still do despite [his] limitations" and represents an assessment "based on all relevant evidence." 20 C.F.R. § 416.945(a).

Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996)(citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Specifically, it is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

## V.

## DISCUSSION

Plaintiff contends that the ALJ erred because he failed to identify specific, legitimate reasons for rejecting Dr. Sekhorn's opinion. (Complaint at 2); and 2). Additionally, Plaintiff argues that the ALJ erred by finding that Plaintiff could work as a cleaner, hospital cleaner, and mail clerk because the requirements of the jobs are inconsistent with Plaintiff's Residual Functional Capacity ("RFC"). (Id. at 5). The Court agrees.

\\

**A.   The ALJ Failed to Provide Specific And Legitimate Reasons To Reject Dr. Sekhorn's Opinion**

Where a treating physician's opinion is contradicted "the [ALJ] must determine credibility and resolve the conflict." <u>Valentine v. Comm'r</u>, 574 F.3d 685, 692 (9th Cir. 2009) (quoting <u>Lester v. Chater</u>, 81 F.3d 821, 830 (9th Cir. 1995)). "However, to reject the opinion of a treating physician in favor of a conflicting opinion . . . an ALJ must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." <u>Id.</u> (internal quotation marks omitted). "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the [physician's] are correct." <u>Orn v. Astrue</u>, 495 F.3d 625, 632 (9th Cir. 2007) (internal citation omitted).

Here, Plaintiff's treating physician, Dr. Sekhorn, treated Plaintiff for over five years and stated his diagnosis was "298.9 Psychotic disorders."  (AR 396).  According to Dr. Sekhorn, Plaintiff "experiences episodes of auditory hallucinations and paranoia episodes" despite complying with his medication requirements. (<u>Id.</u>).  Plaintiff's medications include "Haldol, Zyprexa and Cogentin." (<u>Id.</u>).  Dr. Sekhorn concluded that Plaintiff is "unable to work and may be eligible for SSI benefits."  (<u>Id.</u>).

While the ALJ was correct in asserting that a finding of disability is "reserved to the Commissioner" (AR 15), he nevertheless had a duty to provide specific and legitimate reasons, based upon evidence in the record, for rejecting Dr. Sekhorn's opinion.  <u>Valentine</u>, 574 F.3d at

692. However, the ALJ merely dismissed Dr. Sekhorn's conclusions without pointing to evidence in the record to support such a finding. Cf. Orn, 495 F.3d at 633-34. The ALJ did not address or refute Plaintiff's "episodes of auditory hallucinations and paranoia." (AR 396). Additionally, he did not address or refute Plaintiff's diagnosis of "298.9 Psychotic disorders." (Id.). Thus, the ALJ failed to provide specific, legitimate reasons based on substantial evidence in the record to reject Dr. Sekhorn's opinion. Upon remand, the ALJ must either provide specific, legitimate reasons, based upon factual evidence in the record, for rejecting Dr. Sekhorn's opinion or incorporate Dr. Sekhorn's limitations into the RFC determination.

**B.   The ALJ Did Not Address The Deviation Between Plaintiff's RFC And The DOT Requirements Of Jobs The VE Said Plaintiff Could Perform**

In order for an ALJ to rely on job descriptions in the Dictionary of Occupational Titles ("DOT") that fails to comport with a Plaintiff's limitations, the ALJ must "definitely explain this deviation." Pinto v. Massanari, 249 F.3d 840, 847 (9th Cir. 2001). The ALJ may rely on expert testimony that contradicts the DOT if the record contains persuasive evidence supporting the deviation. Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008); Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995). However, an ALJ may not rely on personal speculation or incomplete VE testimony. See Tommasetti, 533 F.3d at 1042.

Here, the ALJ did not definitively explain the deviation between his Residual Functional Capacity ("RFC") finding of "no contact with the public" and "no reading past basic sentences" (AR 12) and the job

requirements of cleaner, hospital cleaner, and mail clerk.  Pinto, 249 F.3d at 847.

First, both cleaner and hospital cleaner positions require Plaintiff to interact with the public and read past basic sentences. The cleaner reading requirement of "passive vocabulary of 5,000 to 6,000 words" at "a rate of 190-215 words per minute" deviates from Plaintiff's "reading basic sentences" limitation.  DICOT 381.687-018, 1991 WL 673258.  Additionally, the duties of a cleaner consisting of keeping production areas clean, transporting materials between buildings, and maintaining outside areas by "cutting grass or shoveling snow" are deviations because they place Plaintiff in contact with the public. Id. Moreover, the hospital cleaner duties requiring cleaning various hospital areas also places Plaintiff in contact with the public.  DICOT 323.687-010, 1991 WL 673265.  The reading requirements are identical to the cleaner reading requirements, which deviates from the "reading basic sentences" limitation.  Id.  Further, the requirement of "deal[ing] with several concrete variables" is inconsistent with Plaintiff's limitation to perform simple repetitive tasks.  Id.  Therefore, the ALJ's finding that Plaintiff can perform the the cleaner and hospital cleaner positions requires a deviation from the DOT description of these positions.

Second, the mail clerk position requires Plaintiff to "read[] past basic sentences" and perform more than "simple repetitive tasks." (AR 12).  The mail clerk position also requires reading with a "passive vocabulary of 5,000 to 6,000 words" at a rate of 190-215 words per minute, which is inconsistent with Plaintiff's reading limitation.

DICOT 209.687-026, 1991 WL 671813. Mail clerk duties consisting of sorting, time-stamping, examining, collecting, and distributing mail exceed Plaintiff's limitation to perform simple repetitive tasks. Id. Moreover, the requirement that Plaintiff "deal with problems involving several concrete variables" is also inconsistent with Plaintiff's limitations. Id.

The ALJ failed to definitively explain the deviations from the DOT requirements and his RFC finding. Pinto, 249 F.3d at 847. In fact, he never acknowledged the deviations in his opinion. Further, the ALJ did not have expert testimony to justify the deviation from DOT because he never asked the VE to testify about the deviations. Tommasetti, 533 F.3d at 1042. This error was not harmless because there were deviations between Plaintiff's limitations and every position the VE found he could perform. Cf. Massachi v. Astrue, 486 F.3d 1149, 1154 n. 19 (9th Cir. 2007). Therefore, remand is required. On remand, the ALJ must either definitively explain the deviations from the DOT, or reevaluate the work that Plaintiff can perform.

## VI.

## CONCLUSION

Pursuant to sentence four of 42 U.S.C. § 405(g),[3] IT IS ORDERED that Judgment be entered REVERSING and REMANDING the decision of the Commissioner for further administrative proceedings consistent with this decision. The Clerk of the Court shall serve copies of this Order and the Judgment on counsel for both parties.

DATED: October 7, 2011

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED IN OR SUBMITTED TO ANY ONLINE SERVICE SUCH AS WESTLAW OR LEXIS.**

---

[3] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing, the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."